## A03A2560. JOHNSON v. THE STATE.

(592 SE2d 507)

ELDRIDGE, Judge.

Jerry L. Johnson, Sr. was charged with the offenses of aggravated stalking, criminal attempt to commit burglary, and two counts of obstruction of an officer. The case was heard by a jury. Following deliberations, the jury returned a verdict of guilty on all counts. Thereafter, the trial court entered a consent order directing a verdict of acquittal as to the offense of criminal attempt to commit burglary (Count 2). Johnson appeals from the judgment and the conviction entered on the remaining counts. On appeal, Johnson's sole enumeration of error is his contention that the evidence was not sufficient to authorize his convictions. Upon review of the evidence before us, we affirm in part and reverse in part as follows.

Viewed in the light most favorable to the verdict,[1] the evidence shows that during the late evening hours of December 31, 2001, and the early morning hours of January 1, 2002, Johnson went to the home of Lynette Daniels in violation of a condition of his probation which prohibited his contact with Daniels. Daniels testified that twice that evening Johnson knocked on her door and shouted through the closed door that he wanted to talk with her. Daniels refused to open the door each time and told Johnson to leave her property. The second time, Daniels told Johnson that she was going to call the police. As she was calling the police from the telephone in her bedroom, the glass in the window was broken from the outside. Even though Daniels never opened the door, she testified that she was certain the person at her door was Johnson because she recognized both his voice and could see his head when she looked through the blinds at the window by the door.

Commander Steve Heaton of the Valdosta Police Department testified that around 2:20 a.m. on January 1, 2002, he heard a "be on the lookout" ("BOLO") for a black male who was bald, wearing white shorts, and had just damaged property at 713 East Jane Street. The dispatch further stated that the suspect had fled toward Ann Street. Commander Heaton proceeded to East Jane Street in his vehicle. At the intersection of East Jane Street and Ann Street, Commander Heaton saw a man walking who matched the description in the BOLO. As the unmarked police car approached Johnson, he walked up a driveway. Commander Heaton pulled into the driveway and saw Johnson climbing over a fence. Commander Heaton, who was in uniform, exited the car, identified himself as a police officer, and demanded that Johnson stop. Instead of stopping, Johnson dropped to the ground on the other side of the fence and proceeded to run in the opposite direction.

Commander Heaton and Officer Chavarria, who had arrived on the scene as backup, ran around the front of the house and saw Johnson crossing Jane Street. Again, Commander Heaton identified himself as a police officer and directed Johnson to stop. Johnson ignored his command again and continued to run. Commander Heaton and Officer Chavarria apprehended Johnson a short distance later as he attempted to hide behind a house. After Johnson had been apprehended, Heaton questioned him; Heaton testified at trial that,

I put the flashlight on him and asked him what he was doing there. Of course he wouldn't answer me. Asked him why he

---

[1] *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

ran. He didn't answer me. Asked him what his name was and he wouldn't tell me.

Johnson was arrested for obstruction of an officer and transported to Daniels' home where she identified him as the man who had earlier that evening come to her home twice, each time knocking upon her door and demanding to talk with her. *Held*:

1. The evidence was sufficient to support Johnson's conviction for aggravated stalking (Count 1). One form of aggravated stalking under OCGA § 16-5-91 (a) occurs when a person makes nonconsensual contact "with another for the purpose of harassing and intimidating them in violation of a condition of probation. [Cit.]" *Fly v. State*, 229 Ga. App. 374, 376 (1) (494 SE2d 95) (1997).

> The term "harassing and intimidating" means "a knowing and willful course of conduct directed at a specific person which causes emotional distress by placing such person in reasonable fear of death or bodily harm" to herself or an immediate family member and serves no legitimate purpose. OCGA § 16-5-90 (a). Overt threats of bodily harm are not required. Id.

Id.

In this case, Johnson was in direct violation of a condition of his probation when he came to Daniels' home. Even though she refused to open the door and requested that he leave, Johnson returned a short time later, again knocking on Daniels' door and demanding to talk with her, causing Daniels to feel it was necessary to call the police for protection. Under these facts a rational jury could have found beyond a reasonable doubt that such acts were intended to harass and intimidate and reasonably placed Daniels in fear for her safety. See *Jagat v. State*, 240 Ga. App. 822, 823 (1) (525 SE2d 388) (1999).

2. The evidence was also sufficient to support Johnson's conviction under Count 3 of the indictment for misdemeanor obstruction of an officer based upon his flight.

> Misdemeanor obstruction consists of knowingly and wilfully obstructing or hindering any law enforcement officer in the lawful discharge of his duties. OCGA § 16-10-24 (a).

(Citation omitted.) *Patterson v. State*, 244 Ga. App. 222, 224 (2) (535 SE2d 269) (2000).

Here, at the time Commander Heaton made the initial contact with Johnson, Heaton was in the lawful discharge of his duties. Johnson matched the physical description given in the BOLO dispatch

and was found in the area that the dispatch had identified as the location to which the suspect had fled. Accordingly, Commander Heaton had a reasonable articulable suspicion to conduct an investigative stop of Johnson. *Terry v. Ohio*, 392 U. S. 1 (88 SC 1868, 20 LE2d 889) (1968); *Carter v. State*, 192 Ga. App. 726, 727 (3) (386 SE2d 389) (1989). Thereafter, on two separate occasions, Heaton identified himself as an officer and attempted to approach Johnson to investigate; both times, although directed to halt, Johnson fled. " 'Flight after a lawful command to halt constitutes obstruction of an officer. (Cit.)' *Sprinkles v. State*, 227 Ga. App. 112, 113 (1) (488 SE2d 492) (1997)." *Patterson v. State*, supra at 224 (2). Additionally, Johnson was hiding behind a house when he was finally apprehended. This evidence is sufficient for a rational trier of fact to find Johnson guilty beyond a reasonable doubt of the obstruction of Heaton's lawful performance of his duties as a police officer.

3. Johnson contends the evidence was insufficient to support his conviction for misdemeanor obstruction of an officer under Count 4 of the indictment based upon his silence in the face of Commander Heaton's questioning. Under the specific facts of this case, we agree that the evidence was insufficient to prove obstruction beyond a reasonable doubt.

In this case, at the time Johnson stood in silence during Heaton's questioning, he had been apprehended and was in custody; probable cause existed to arrest Johnson for obstruction based upon his flight and he was, in fact, arrested on such basis. Under these specific circumstances, Johnson had a constitutional right to stand silent during Heaton's questioning. *Miranda v. Arizona*, 384 U. S. 436 (86 SC 1602, 16 LE2d 694) (1966); see also *Doyle v. Ohio*, 426 U. S. 610, 619 (96 SC 2240, 49 LE2d 91) (1976); *Gibbs v. State*, 217 Ga. App. 614, 615 (458 SE2d 407) (1995).

This is not a case wherein an "investigation" was impeded, because Johnson was already lawfully in custody for the commission of an offense and his right to silence was triggered. Compare *Hudson v. State*, 135 Ga. App. 739 (218 SE2d 905) (1975) (it is a jury question as to whether refusal to provide identifying material *during an investigation* may constitute obstruction, i.e., the refusal to give a driver's license); accord *Bailey v. State*, 190 Ga. App. 683 (379 SE2d 816) (1989). Neither is this a case in which only "booking" information was sought. Compare *Edwards v. State*, 220 Ga. App. 74, 76-77 (2) (467 SE2d 379) (1996). Indeed, before asking Johnson his name, Commander Heaton asked him several potentially incriminating questions related to the commission of the obstruction offense alleged under Count 3 of the indictment. Under these circumstances, the State's evidence does not demonstrate beyond a reasonable doubt the requisite intent, i.e., that Johnson's failure to identify himself was a

knowing and wilful obstruction of the investigation of an offense, as opposed to a legitimate invocation of his Fifth Amendment right to silence in the face of an ongoing police interrogation. *Franks v. State*, 268 Ga. 238, 240 (486 SE2d 594) (1997); *Wagner v. State*, 206 Ga. App. 180, 182 (424 SE2d 861) (1992).[2] Accordingly, we conclude as a matter of law that Johnson's conviction under Count 4 of the indictment must be reversed.

*Judgment affirmed as to Counts 1 and 3. Judgment reversed as to Count 4. Johnson, P. J., and Mikell, J., concur.*

DECIDED DECEMBER 19, 2003.

*Kelley, Lovett & Mullis, David E. Mullis, Brian S. Limbocker*, for appellant.

*J. David Miller, District Attorney, Bradfield M. Shealy, Assistant District Attorney*, for appellee.

---

[2] We note that had Johnson given Commander Heaton a false name, such affirmative act could demonstrate the requisite intent. *Wynn v. State*, 236 Ga. App. 98, 99 (2) (511 SE2d 201) (1999).