## A07A0735. BECKOM v. THE STATE.
### (648 SE2d 656)

MIKELL, Judge.

Following a jury trial, Kay Beckom was found guilty of three misdemeanors: contributing to the delinquency of a minor (Count 1), obstruction of a law enforcement officer (Count 2), and one count of maintaining a disorderly house (Count 3). She was acquitted of a second count of maintaining a disorderly house (Count 4). She now appeals the denial of her motion for new trial, enumerating errors which in essence challenge the sufficiency of the evidence. We affirm as to Count 1 and reverse as to Counts 2 and 3.

On review of the sufficiency of the evidence in a criminal case, the appellate court asks "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."[1] As a reviewing court, we determine only whether the evidence to convict is sufficient; we do not weigh the evidence or judge the credibility of the witnesses. Thus, we will uphold the jury's verdict "so long as there is some competent evidence, even though contradicted, to support each element of the [s]tate's case."[2]

1. Beckom's first four enumerations of error challenge her conviction for contributing to the delinquency of a minor. We find no error.

Construed to support the jury's verdict, the pertinent evidence adduced at trial showed that on Friday, December 2, 2005, beginning at 8:30 p.m., a loud party took place at Beckom's home, lasting until at least 11:45 p.m. Present at the party were a number of juveniles, at least one of whom, 16-year-old T. M., was "very intoxicated" by 11:45 in the evening when his mother was called by police to pick him up from Beckom's house. T. M. testified at trial that his friend,

---

[1] *Little v. State*, 262 Ga. App. 377, 378 (585 SE2d 677) (2003), citing *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

[2] (Footnote omitted.) *Little*, supra.

Beckom's son C. B., had been planning this party for weeks and that Beckom knew of the plans and had given prior permission for the party to take place at her home. T. M. further testified that, on the date in question, he heard C. B. tell his mother once again of the plans to have a party in the basement of Beckom's home that evening; and that Beckom made no objection. T. M. also testified that the boys asked Beckom's boyfriend to purchase alcohol for C. B. and his underage friends; that Beckom was aware that the boys had asked her boyfriend to buy alcohol for them; and that the boyfriend did in fact buy alcohol for the juveniles.

According to T. M.'s testimony at trial, this party was expected to be the "party of the year"; as many as 50 high-school students showed up; and "[t]here was just a whole bunch of drinking and marijuana, and there was loud music and everybody was dancing. There was a couple of people that got into fights. Me, personally, I got in a fight. . . . Great party." The music was so loud that conversations were impossible unless conducted at a scream. At trial, Beckom admitted that she was at home the entire night, but she testified that she had denied her son permission to have a party that night because she was tired; that she locked the house and went to bed around 9:30 p.m.; and that she was asleep and slept throughout the night without being aware that any party was going on.

Count 1 of the accusation charged Beckom with contributing to the delinquency of a minor

> by knowingly and willfully encouraging several juveniles, all individuals under the age of seventeen (17), by providing an unsupervised location for the juveniles to gather where alcohol was both present and consumed by said juveniles, a delinquent act as set for [sic] in O.C.G.A. § 15-11-2 (6), thus violating O.C.G.A. § 16-12-1.

Beckom asserts that "providing an unsupervised location for juveniles to gather" is not "a delinquent act"; that she could not be found guilty of contributing to the delinquency of a minor without evidence that she herself provided the alcoholic beverages to the juveniles; and that there was no evidence that she was aware of the underage drinking going on in her home. These arguments lack merit.

Under the statutory scheme, a person "commits the offense of contributing to the delinquency . . . of a minor when such person . . . [k]nowingly and willfully encourages, causes, abets, connives, or aids a minor in committing a delinquent act."[3] A "delinquent act" is

---

[3] OCGA § 16-12-1 (b) (1).

defined to include "[a]n act designated a crime by the laws of this state."[4] It is a crime in Georgia for any person under 21 years old to "knowingly possess any alcoholic beverage."[5] Thus, if underage visitors to Beckom's home were drinking alcohol, and the record is replete with evidence that they were, those juveniles were in violation of OCGA § 3-3-23 (a) (2) and so were engaging in a "delinquent act" under OCGA § 15-11-2 (6) (A). If Beckom was aware of the juveniles' plans, allowed the party to occur without interfering, and turned a blind eye to the juveniles' alcohol consumption, she was contributing to the delinquency of a minor under OCGA § 16-12-1 (b) (1).[6]

Moreover, the statute does not require that Beckom herself provide the alcohol consumed by the juveniles in her home. Beckom was not accused or convicted of furnishing alcoholic beverages to minors;[7] instead, she was convicted under OCGA § 16-12-1 (b) (1), one element of which is that the juvenile, not Beckom, commit a "delinquent act": here, underage possession of alcohol, a violation of OCGA § 3-3-23 (a) (2).

Beckom's argument that there was no evidence that Beckom knew that the teenagers were drinking alcohol in her house must also fail. In response to the question, "Did [Beckom] know there was going to be alcohol [at the party]?" T. M. replied, "I think so, yes, ma'am." Without citing authority, Beckom argues that this testimony is not probative. We recognize that testimony that amounts to "nothing more than an impression on [the witness's] part, without any actual knowledge as to the fact, . . . is therefore without probative value."[8] Taking T. M.'s testimony as a whole, however, it is clear that his testimony was grounded in his own personal knowledge of the facts to which he testified.

Beckom also argues that the "totality of the evidence produced at trial" does not support the verdict. This argument does not provide grounds for reversal. "Resolving conflicts in the testimony of witnesses and weighing the evidence are functions for the jury,"[9] not for this Court on appeal.[10] Beckom claims that her testimony established

---

[4] OCGA § 15-11-2 (6) (A).

[5] OCGA § 3-3-23 (a) (2).

[6] See generally *Eckman v. State*, 201 Ga. App. 879 (413 SE2d 221) (1991) (conviction under OCGA § 16-12-1 affirmed where defendant, after suggesting that runaway minor depart with his two male friends, failed to tell her mother of her whereabouts during the ensuing two-day search for her).

[7] OCGA § 3-3-23 (a) (1) ("No person knowingly . . . shall furnish . . . any alcoholic beverage to any person under 21 years of age").

[8] *Rimes v. Martin*, 197 Ga. 273, 280 (2) (29 SE2d 49) (1944).

[9] (Punctuation and footnote omitted.) *Dukes v. State*, 275 Ga. App. 442, 443-444 (2) (622 SE2d 587) (2005).

[10] See *Young v. State*, 280 Ga. 65, 66 (1) (623 SE2d 491) (2005).

that she was not guilty; however, the jury was not required to accept her explanation of events.[11] We conclude that the evidence was sufficient for any rational trier of fact to find Beckom guilty beyond a reasonable doubt of contributing to the delinquency of a minor.[12]

2. Beckom was convicted of misdemeanor obstruction of a law enforcement officer[13] based on her refusal to respond to knocking at her front door or to calls made to her home phone, and "concealing the whereabouts of juveniles in her residence." We conclude that Beckom's conduct does not rise to the level of obstruction as a matter of law; therefore, we reverse her conviction under Count 2.

Refusal to answer knocking at one's front door, ringing of the door bell, or ringing of the phone, without more, does not constitute obstruction of the police, even if it is the police doing the knocking and ringing. The record before us reflects that, in the early hours of the day after the party, the police were searching for a juvenile, C. R., who had been reported missing by his father during the night. The police had observed C. R.'s car parked in front of Beckom's home. Corporal Ryan Youmans of the Peachtree City Police Department testified that he was dispatched to her home, where he knocked on the doors, both front and back, for about an hour, in an attempt to inquire about C. R. Eventually, upon discovering that the front door was unlocked, Youmans opened it and called out that he was a police officer looking for a missing boy. At that point, Beckom came to the door. Simultaneously, Lieutenant David E. Hill, also of the Peachtree City Police Department, telephoned Beckom's home in an attempt to get her to come to the door. When Beckom answered the phone, she told Hill that she was not at home, but at that moment she was at her door talking to Youmans; Hill could hear Youmans's voice in the background. Youmans told Beckom that he was looking for C. R., and though she at first denied any knowledge of C. R., she yelled for the boys and eventually C. R. emerged from the basement. After reuniting C. R. with his father, Youmans and another officer again knocked on the door and rang the doorbell in an attempt to talk with Beckom further; however, she did not answer the door a second time and the officers eventually left.

Youmans and the other officer both acknowledged that, without a warrant, they did not have the right to enter Beckom's house without her permission.[14] If they did not have the right to enter, then it follows that Beckom had the right to refuse them entry. This Court

---

[11] *Dukes*, supra at 443 (2).

[12] *Jackson v. Virginia*, supra.

[13] OCGA § 16-10-24 (a) ("a person who knowingly and willfully obstructs or hinders any law enforcement officer in the lawful discharge of his official duties is guilty of a misdemeanor").

[14] But see *Burk v. State*, 284 Ga. App. 843 (644 SE2d 914) (2007).

has affirmed convictions for obstruction in cases involving flight from police officers after a lawful command to halt,[15] refusal to provide identification[16] or giving false information[17] to officers during an investigation or after being stopped for reckless driving,[18] lying to officers attempting to execute a warrant by asserting that the arrestee was not on the premises,[19] or the arrestee's slapping an officer while he was making the arrest.[20] In such cases, whether the defendant's act "hindered" the police in a particular situation was a question for the factfinder.[21] No such circumstances are present in the case at bar.

Here, the only evidence of obstruction was that Beckom did not open her door to police officers fast enough. Once she came to the door, although she was verbally abusive, there was no evidence that she was hiding any of the juveniles, even though they were slow to emerge from the basement. She did not tell the officer that C. R. was not in the home; she merely denied any knowledge of the missing boy's whereabouts. The state has cited no authority, and we have found none, for the proposition that an individual's failure to answer the phone and failure to answer a knock on the door constitutes obstruction under OCGA § 16-10-24 (a), where there is no evidence that the individual knew of an on-going investigation, and certainly no evidence that the individual was attempting "knowingly and willfully" to impede such an investigation. Therefore, applying the standard of *Jackson v. Virginia*,[22] we conclude that the evidence was insufficient to authorize a rational trier of fact to find Beckom guilty beyond a reasonable doubt of the offense of obstruction of an officer.

3. Beckom further challenges her conviction under Count 3 of the accusation for maintaining a disorderly house "to the encouragement of drinking or other misbehavior." Because we conclude that the state did not present any evidence as to an essential element of this crime,[23] we reverse.

---

[15] *Johnson v. State*, 264 Ga. App. 889, 892 (2) (592 SE2d 507) (2003).

[16] *Hudson v. State*, 135 Ga. App. 739, 741-742 (2) (218 SE2d 905) (1975) (affirming denial of motion to dismiss obstruction charge in indictment).

[17] *Carter v. State*, 188 Ga. App. 464, 465 (2) (373 SE2d 277) (1988) (giving police an incorrect birthdate and social security number after being arrested for shoplifting).

[18] *Bailey v. State*, 190 Ga. App. 683, 684 (379 SE2d 816) (1989).

[19] *Duke v. State*, 205 Ga. App. 689 (423 SE2d 427) (1992) (whole court decision).

[20] *Mathis v. State*, 250 Ga. App. 500, 501 (552 SE2d 97) (2001).

[21] See, e.g., *Duke*, supra at 690; *Carter*, supra. Compare *Wagner v. State*, 206 Ga. App. 180, 182 (424 SE2d 861) (1992) (defendant's mere refusal to give his name to police officer, without more, could not have amounted to obstruction).

[22] Supra.

[23] OCGA § 16-11-44 ("A person who keeps and maintains . . . a common, ill-governed, and disorderly house, to the encouragement of gaming, drinking, or other misbehavior, . . . is guilty of a misdemeanor").

A conviction under OCGA § 16-11-44 requires evidence of "not casual occurrences but general, customary habits of the house."[24] No such showing was made here. Although Beckom herself testified that two earlier parties had taken place at her house, these parties occurred almost a year earlier. The state did not present any evidence that, at these earlier parties, any underage drinking took place. The only gathering where there was evidence of underage drinking was the party at issue here, on December 2, 2005. Because there was no evidence of underage drinking at any earlier gatherings at Beckom's home,[25] we reverse her conviction under Count 3 for maintaining a disorderly house.

*Judgment affirmed in part and reversed in part. Johnson, P. J., and Phipps, J., concur.*

DECIDED JUNE 20, 2007.

*Paul S. Liston*, for appellant.

*Jamie K. Inagawa*, Solicitor-General, *Alisha B. Thompson*, Assistant Solicitor-General, for appellee.

---

[24] (Citation omitted.) *Hubbard v. State*, 256 Ga. 637, 638 (352 SE2d 383) (1987); accord *Tate v. State*, 198 Ga. App. 276, 278 (3) (401 SE2d 549) (1991).

[25] Compare *Tate, supra* (defendant's conviction under OCGA § 16-11-44 sustained where defendant had encouraged four different minors to drink alcohol in his home on three separate occasions).