IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
August 5, 2008 Session

## STATE OF TENNESSEE v. BRITTANY ANN KIESTLER

**Direct Appeal from the Circuit Court for Lauderdale County**
**No. 8134    Joseph H. Walker, III, Judge**

_____

**No. W2007-02703-CCA-R3-CD  - Filed January 20, 2009**

_____

After a bench trial, the Lauderdale County Circuit Court convicted the appellant, Brittany Ann Kiestler, of two counts of contributing to the delinquency of a minor and ordered her to serve eleven months, twenty-nine days on supervised probation.  On appeal, the appellant contends that the evidence is insufficient to support her convictions.  Upon review, we affirm the judgments of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Circuit Court are Affirmed.**

NORMA MCGEE OGLE, J., delivered the opinion of the court, in which THOMAS T. WOODALL and D. KELLY THOMAS, JR., JJ., joined.

J. Thomas Caldwell, Ripley, Tennessee, for the appellant, Brittany Ann Kiestler.

Robert E. Cooper, Jr., Attorney General and Reporter; Sophia S. Lee, Assistant Attorney General; D. Michael Dunavant, District Attorney General; and P. Neal Oldham, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

### I.  Factual Background

At trial, seventeen-year-old S.C.[1] testified that she was sixteen years old in August 2006. About 8:00 or 9:00 p.m. on August 5, 2006, S.C. went to a party at the appellant's house.  S.C. did not know the appellant well but knew some of the appellant's friends.  When S.C. arrived at the party, a lot of people were there, and most of them were in the appellant's back yard.  S.C. saw other people her age at the party, and alcohol was present.  She stated that beer was "[e]verywhere," that

---

[1]Because some of the witnesses were minors at the time of the crimes, we have identified them by their initials.

she did not drink any beer, and that she stayed at the party for only thirty minutes to one hour. During that time, she saw the appellant two or three times. On cross-examination, S.C. testified that she went to the party with some friends and that the appellant did not invite her to the party.

Fifteen-year-old T.C., S.C.'s sister, testified that she attended the appellant's party on August 5, 2006, and that she was fourteen years old at the time. Although no one had invited T.C. to the party, she knew all of her friends were going and went with them. When she arrived at the appellant's house, she saw "a bunch of cars and people hanging out." Most of the people at the party were not in the appellant's house but were in the appellant's front and back yards. T.C. stated that alcohol was "[j]ust everywhere, just in the truck, like coolers, and just around the house." T.C. drank some alcohol, and she identified a photograph taken at the party of her, the appellant, and two other girls. She acknowledged that in the photograph, she was holding a beer. She stated that the other two girls in the photograph were L.H. and C.P. and that the photo showed L.H. also holding a beer. T.C. said that the appellant did not give her the beer, that she got the beer out of a cooler in someone's truck, and that people brought their own beer to the party.

On cross-examination, T.C. testified that she had met the appellant approximately two times prior to the party and that she did not know the appellant well. She arrived about 8:00 or 9:00 p.m., and she went to the party with her sister and her sister's friends. T.C. spoke with the appellant about twenty minutes after she arrived at the party. She got one beer out of a cooler in someone's truck about thirty minutes after she arrived, and she did not know who owned the truck. She estimated that fifty or sixty people were at the party and that she stayed at the appellant's house for about one hour.

On redirect examination, T.C. acknowledged that she wrote and signed a statement describing what happened on the night of August 5, 2006. In the statement, T.C. said the appellant gave her and her friends beer. However, she testified at trial that the statement was untrue. She said that she drank four or five beers at the party and that although the appellant did not give her the beers, the appellant did not try to stop her from drinking them.

Eighteen-year-old L.H. testified that she attended the appellant's party when she was sixteen years old. She and the appellant were not best friends, but L.H. would talk to the appellant through the My Space website on the internet. L.H. went with some of her friends to the appellant's party, and a lot of people were standing around in the appellant's front and back yards. L.H. drank beer at the party, and she acknowledged that she was holding a beer in the photograph taken with T.C., C.P., and the appellant. She said that she got the beer from a cooler in the back of a truck and that she was charged with underage drinking and tobacco use as a result of her actions at the party. L.H. stayed at the party for two to three hours and drank six to eight beers. Other high school students were also drinking alcohol at the party, and the appellant did not tell L.H. she was too young to drink beer.

On cross-examination, L.H. testified that she found out about the party from friends and that no one personally invited her to the party. At some point, the police arrived and told people to move

their cars from blocking the road. Later, the police arrived again and made two or three people leave. On redirect examination, L.H. acknowledged that she was probably holding a beer the entire time she was at the party. She testified that she would not have been allowed to drink alcohol at home and that she probably would not have consumed any alcohol that night if she had not gone to the appellant's party.

Seventeen-year-old C.P. testified that she was sixteen years old on August 5, 2006, and attended the appellant's party. C.P. and the appellant were friends, and C.P. had known the appellant "for a while." The appellant did not want minors at the party, so the appellant did not invite young people. Although the appellant did not tell C.P. about the party, everyone at C.P.'s school knew about it. C.P. saw the appellant at the party, and the appellant did not ask her to leave. C.P. stated that she was in the photograph with the appellant, T.C., and L.H. but that she did not drink alcohol. She said that people brought their own beer to the appellant's house and that they had coolers of beer in the back of their trucks. On cross-examination, C.P. acknowledged that underage people were not invited to the appellant's party. She said that she was only at the party for twenty minutes and that the police came to the appellant's house and said too many vehicles were parked on the road.

Tremaine Reed testified that in August 2006, he worked for the Lauderdale County Sheriff's Department and responded to two calls about the appellant's party. The first call was a complaint about loud music and cars parked on the road. Reed went to the appellant's house and spoke with her. The appellant told him she would take care of the problem. About twenty minutes later, Reed responded to a second call about loud music at the party. Reed and another officer returned to the appellant's home, and the appellant told Reed again that she would take care of the problem. During the officers' second visit to the party, some people got into an altercation, and a vehicle was vandalized. Reed said that he did not see any underage people drinking at the party but that he was not looking for minors drinking alcohol. He said that he just wanted to take care of the complaints and "go back in service." On cross-examination, Reed testified that when he responded to the second complaint and spoke with the appellant, the appellant told him she did not want anyone at the party who did not intend to spend the night or she did not invite.

Tanzie Henson testified for the appellant that the appellant invited her and her husband to attend the appellant's birthday party on August 5, 2006. The appellant, Lena Kirby, and Leslie Smith organized the party and invited adults. When Henson arrived at the appellant's home, only three people were present. About 8:00 p.m., juveniles arrived in five or six vehicles. The juveniles brought their own alcohol in coolers and "trashed" the appellant's house and yard. Henson saw two girls drinking alcohol out of Styrofoam cups, and she poured their alcohol onto the ground. At some point, the police arrived and told the appellant to turn down the loud music. More juveniles arrived at the party, and the appellant stayed inside her house in order to try to keep them under control. The police returned to the house two additional times. Henson acknowledged that she, her husband, and the appellant tried to keep the party under control, and she said they did not give the juveniles any alcohol. She stated that about 11:45 p.m., they "were having to take the beer that belonged to the people who were of age and hide it . . . because these kids were just like bees swarming, grabbing people's drinks." The appellant was upset and crying because the party had turned into a disaster.

-3-

Henson said that some of the juveniles "were getting out of hand" and that they were asked to leave.

On cross-examination, Henson testified that when the juveniles first arrived at the party and started drinking alcohol, she did not ask them to leave and did not call the police. When the police arrived at the party for the third time, she told the police, "These kids need to go." She acknowledged that she knew the juveniles were getting beer out of coolers and said that "[t]hey were all chug-a-lugging pretty good." Although the appellant did not call the police, she shut down the party about 1:15 a.m. and told the juveniles to leave. At that point, "everybody started getting out." Henson said that many juveniles were not drinking and that she did not call any parents because "it wasn't my place to."

Lena Kirby testified that she was a kindergarten teacher and grew up with the appellant. She and the appellant organized "a little get-together" on August 5, 2006, for the appellant's twenty-fifth birthday. Kirby invited friends her own age. At some point, the police arrived at the party, and Kirby went outside. She then "realized how many people were actually there and what was going on." She said that she did not give any alcohol to minors and that the police asked everyone to move their cars. Kirby went back inside because she and the appellant were trying to keep everyone out of the appellant's house. The police later returned to the party, and the appellant started telling everyone to leave.

On cross-examination, Kirby testified that everyone she and the appellant invited to the party was over twenty-one years old. She and the appellant invited ten to fifteen people, but they told the guests that the guests could bring their friends. During the party, the appellant tried to get the underage drinkers to leave, and the appellant told the police she wanted everyone to leave. However, Kirby acknowledged that the appellant did not tell all of the underage drinkers to leave the party. Kirby stated that she did not remember writing in "cyberspace" that the appellant's party was a "drunkenfest."

The appellant testified that she worked as a secretary for her father's company and as a disc jockey for private parties, weddings, and school functions. As a result of her disc jockey work, the appellant knew a lot of juveniles. The appellant turned twenty-five years old on August 4, 2006, and she and Lena Kirby planned a birthday party for August 5. They expected twenty-five to thirty people to attend the party, and everyone was supposed to be over twenty-one years old. They tried to keep the party "low key so nobody [underage] would . . . come," and the appellant did not know juveniles were going to show up. The appellant saw C.P. and a couple of C.P.'s friends at the party, and the appellant did not tell them to leave. She said she loved to take photographs and took a photograph with C.P., T.C., and L.H. The appellant did not give beer to any juveniles, and she did not think "it was [her] place to tell them to leave." Between 9:00 and 10:00 p.m., Tanzie Henson came into the house and told the appellant the police were there. The appellant went outside and saw juveniles everywhere. She said that prior to going outside, she "had no clue" so many juveniles were at the party. The appellant stated that she did not encourage the juveniles to drink and that she did not drink with them. She said she did not know the law but now understood underage drinkers had to leave her home.

-4-

On cross-examination, the appellant acknowledged that she saw a few people under eighteen years old drinking alcohol at the party and that she did not tell them to stop drinking. About 1:15 a.m., the appellant had had enough because the police had been to the party too often. She said she told the police to make everyone leave, except for the few people who were going to spend the night at her house. The appellant acknowledged that she had fun at the party, that she posted the picture of her and the three girls on her My Space internet page, and that the picture resulted in her being charged with the crimes in this case. She also acknowledged that she wrote the following on her My Space webpage:

> Of course I have some friends that are underage but cool as hell to me. . . . It seems nosy folks, you women at the courthouse, cough, cough, are making rude comments and trying to raise hell because I have a few pics with them drinking on there. . . . Every pickup with them . . . in it, their parents know what they are doing. . . . Y'all are not their parents, so you have no right trying to throw your two cents in. . . . When I have my parties, yes, there is drinking involved, but I don't pressure anyone into doing it. . . . They can drink a Coke for all I care, just as long as they are having fun. . . . You can't say that your . . . kids haven't [done] the same thing.

She said she was upset when she wrote those comments. The trial court found the appellant guilty of two counts of contributing to the delinquency of a minor by allowing T.C. and L.H. to drink alcohol at the party.

## II. Analysis

The appellant contends that the evidence is insufficient to support her convictions because she did not invite T.C. and L.H. to her home, as the indictment alleges; she did not give them alcohol; and she did not encourage them to drink alcohol. The State contends that the evidence is sufficient because it established that the appellant knew the minors were drinking alcohol in her home and did nothing to stop them. We agree with the State.

When an appellant challenges the sufficiency of the convicting evidence, the standard for review by an appellate court is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); Tenn. R. App. P. 13(e). The State is entitled to the strongest legitimate view of the evidence and all reasonable or legitimate inferences which may be drawn therefrom. State v. Cabbage, 571 S.W.2d 832, 835 (Tenn. 1978). Questions concerning the credibility of witnesses and the weight and value to be afforded the evidence, as well as all factual issues raised by the evidence, are resolved by the trier of fact. State v. Bland, 958 S.W.2d 651, 659 (Tenn. 1997). Accordingly, in a bench trial, the trial judge, as the trier of fact, must resolve all questions concerning the credibility of witnesses and the weight and value to be given the evidence, as well as all factual issues raised by the evidence.

State v. Ball, 973 S.W.2d 288, 292 (Tenn. Crim. App. 1998). The trial judge's verdict carries the same weight as a jury verdict. State v. Hatchett, 560 S.W.2d 627, 630 (Tenn. 1978).

The indictments charged the appellant with contributing to the delinquency of a minor by inviting T.C. and L.H. to the party and allowing them to drink alcohol. An adult commits contributing to the delinquency of a minor if he or she

> contributes to or encourages the delinquency or unruly behavior of a child, whether by aiding or abetting or encouraging the child in the commission of an act of delinquency or unruly conduct or by participating as a principal with the child in an act of delinquency, unruly conduct or by aiding the child in concealing an act of delinquency or unruly conduct.

Tenn. Code Ann. § 37-1-156(a). "Contribute to" means "to have a share in bringing about (a result)." Webster's New World College Dictionary online (4th ed. 2008). A "delinquent act" is defined as

> an act designated a crime under the law, including local ordinances of this state, or of another state if the act occurred in that state, or under federal law, and the crime is not a status offense under subdivision (b)(23)(A)(iii) and the crime is not a traffic offense as defined in the traffic code of the state other than failing to stop when involved in an accident pursuant to § 55-10-101, driving while under the influence of an intoxicant or drug, vehicular homicide or any other traffic offense classified as a felony[.]

Tenn. Code Ann. § 37-1-102(b)(9). Contributing to the delinquency of a minor "may be committed in an unlimited variety of ways which tend to produce or encourage or to continue conduct with a child which would amount to delinquent conduct." Birdsell v. State, 330 S.W.2d 1, 5 (Tenn. 1959).

It is unlawful for anyone under the age of twenty-one to possess or consume intoxicating liquor or beer in Tennessee. See Tenn. Code Ann. § 57-3-412(a)(3)(A). The evidence in this case established that T.C. and L.H. committed delinquent acts by possessing and consuming beer. A photograph taken at the party shows each girl holding a can of beer and posing with the appellant, and the appellant does not contend that she was unaware the girls were drinking alcohol. To the contrary, the evidence shows that the juveniles were at the party for several hours, that the appellant was well aware alcohol was available to them and that they were consuming beer, and that she did nothing to stop them. At one point, the adults even had to hide the beer because the juveniles were taking the adults' drinks. Therefore, although there are no Tennessee cases on point, we conclude that the appellant contributed to T.C.'s and L.H.'s delinquency by turning a blind eye to their drinking and, as alleged in the indictment, by allowing them to drink alcohol at her home. See Beckom v. State, 648 S.E.2d 656, 658 (Ga. Ct. App. 2007) (defendant's conviction for contributing

to the delinquency of a minor upheld when evidence established that she allowed juveniles to attend a party in her home and "turned a blind eye" to their drinking alcohol). Furthermore, the statute did not require that the appellant provide the juveniles with the alcohol in order for her to be found guilty of the crimes. See id. Our legislature has established a separate crime specifically for such actions. See Tenn. Code Ann. § 57-3-412(a)(4). The evidence is sufficient to support the convictions for contributing to the delinquency of a minor.

### III. Conclusion

The judgments of the trial court are affirmed.

_____
NORMA McGEE OGLE, JUDGE