A08A2271. WEST v. THE STATE.
(673 SE2d 558)

DOYLE, Judge.

A Dawson County jury found Benny Charles West guilty of misdemeanor obstruction of a police officer.[1] He appeals, alleging that the State failed to establish venue and challenging the sufficiency of the evidence. For reasons that follow, we affirm.

Upon review of an appeal from a criminal conviction, we view the evidence in a light most favorable to the verdict, and the defendant no longer enjoys the presumption of innocence.[2] "We do not weigh the evidence or determine witness credibility, but only determine if the evidence was sufficient for a rational trier of fact to find the defendant guilty of the charged offense beyond a reasonable doubt."[3]

So viewed, the evidence shows that Linda Cartwright visited family in Lumpkin County on the evening of December 20, 2006. As she drove home with her boyfriend and son, she passed a car "sitting" on a one-lane bridge; according to Cartwright, she "had barely enough room to get around between the bridge and [the vehicle]," but she "eased on around [the other car] and went on." As she continued driving, Cartwright noticed that the vehicle was following her, including after she tried to "bluff" the other driver by making a "really deep U-turn." Because the vehicle was still following her as she approached her home, Cartwright pulled onto a nearby dirt driveway and turned off her engine. As she watched, the

---

[1] West was also charged with carrying a concealed weapon and a second count of obstruction, but the jury found him not guilty of those charges.

[2] See *Short v. State*, 234 Ga. App. 633, 634 (1) (507 SE2d 514) (1998).

[3] *Boyd v. State*, 289 Ga. App. 342 (1) (656 SE2d 864) (2008).

other driver "pulled up just in front of [Cartwright's] driveway [and] sat in the road with his lights on." Cartwright then quietly exited her vehicle with her son, went to a neighboring house, and called 911.

The Dawson County Sheriff's Department dispatched Officer Michael Todd Day to North Seedtick Road to respond to Cartwright's call. When he arrived on the scene, Day observed a car parked in the middle of the roadway, and he activated his blue lights and approached the vehicle. West, the driver of the automobile, gave the officer his driver's license. West told Day that "he had followed a car from his house that tried to run him over in his parent[s'] yard" and that "they had some stuff stolen [so] he was just following to see where they lived." West also stated that the vehicle did not have a license plate. He then asked the officer to give him information regarding the occupants of the other vehicle, but the officer refused to do so based on the events of that night and because Cartwright was "scared" of West. Instead, Day advised West to file a report with the authorities in Lumpkin County "since it happened in Lumpkin County."

After Day spoke with Cartwright, he repeatedly told West to leave, but West failed to do so.[4] According to Day, West ignored him and continued talking, even after the officer specifically advised that he was giving West a lawful order to leave and warning that he would arrest him for obstruction if he did not do so. Day then ordered West to exit his vehicle, repeating the directive approximately five times before West finally complied. Thereafter, the officer arrested West for obstruction.

1. West argues that the State failed to prove venue beyond a reasonable doubt. In general, "a criminal action must be tried in the county in which the crime was committed (Ga. Const. [of] 1983, Art. VI, Sec. II, Par. VI; OCGA § 17-2-2 (a)), and the State may establish venue by whatever means of proof are available to it, including direct and circumstantial evidence."[5] Whether the evidence establishes venue beyond a reasonable doubt is a jury question,[6] and the jury's "decision will not be set aside if there is any evidence to support it."[7]

Here, as West was tried in Dawson County, the State had the burden to prove the crime was committed in Dawson County. Officer Day testified that he was dispatched to North Seedtick Road, which is located "in Dawson County," where he made contact with the

---

[4] Day testified that he instructed West to leave the scene five or six times.

[5] (Punctuation omitted.) *Prudhomme v. State*, 285 Ga. App. 662, 665 (2) (647 SE2d 343) (2007).

[6] See *Moody v. State*, 279 Ga. App. 457, 459 (631 SE2d 473) (2006).

[7] (Punctuation and footnote omitted.) *King v. State*, 271 Ga. App. 384, 385 (1) (609 SE2d 725) (2005).

suspicious vehicle. West argues that the evidence was insufficient to establish venue because "a specific address was never provided" and "there was no evidence that North Seedtick Road was limited to Dawson County." He contends that "a street name, standing alone, is never sufficient to establish venue . . . because streets frequently run through more than one county," relying on *Bradley v. State*[8] and *Jones v. State*.[9] However, those cases are factually distinguishable. In *Bradley*, we reversed the conviction because the only evidence regarding venue was the state patrol officer's testimony that he observed the defendant's vehicle weaving on a specific highway and road; the officer did not specify the county.[10] Similarly, the Supreme Court of Georgia reversed the conviction in *Jones* because the only evidence regarding venue was testimony that the murder victim's home was located on a specific street in Fulton County; there was no evidence introduced regarding the locale of the home where the murder actually occurred.[11]

In the instant case, Officer Day responded to a 911 call regarding a vehicle located on North Seedtick Road, which he specifically testified was located in Dawson County. This evidence was sufficient to prove venue in Dawson County beyond a reasonable doubt.[12]

2. West contends that the evidence was insufficient to support his conviction for obstruction.[13] We disagree.

Georgia law prohibits the knowing and wilful obstruction or hindrance of "any law enforcement officer in the lawful discharge of his official duties."[14] Consequently, "it is an essential element of proof that the officer be engaged 'in the lawful discharge of his duties.' "[15] West argues that the State failed to establish that Day was engaged in the lawful discharge of his duties. We find this argument unpersuasive.

> An officer may be engaged in the lawful discharge of his official duties even if he does not have probable cause to

---

[8] 238 Ga. App. 490 (519 SE2d 261) (1999).

[9] 272 Ga. 900 (537 SE2d 80) (2000).

[10] See *Bradley*, 238 Ga. App. at 490-491.

[11] See *Jones*, 272 Ga. at 903-904 (3).

[12] See *Henry v. State*, 278 Ga. 554, 555 (2) (604 SE2d 469) (2004); *Allen v. State*, 277 Ga. 711, 712 (2) (593 SE2d 662) (2004); *Mahone v. State*, 293 Ga. App. 790, 794 (2) (668 SE2d 303) (2008).

[13] The indictment alleged that West hindered Day in the lawful discharge of his official duties "by refusing to leave Northseed Tick [sic] Road after having been given a lawful order to do so." The jury found West not guilty of a second count of obstruction, which alleged that he hindered Day "by refusing to exit his vehicle and be put under arrest after being ordered to do so."

[14] OCGA § 16-10-24 (a).

[15] *Carr v. State*, 176 Ga. App. 113, 114 (1) (335 SE2d 622) (1985).

arrest an individual. Thus, for example, an individual who obstructs an officer during the investigation of a crime may be guilty of obstruction notwithstanding the lack of probable cause to arrest that individual.[16]

Further, "all law enforcement officers have the general duty to enforce the law and maintain the peace."[17] Here, Cartwright was frightened of West, who had followed her from another county and had parked his vehicle near hers, apparently waiting to investigate her further. Under these circumstances, we conclude that Day was engaged in the lawful discharge of his duties when he responded to and investigated Cartwright's 911 call indicating that West was following her.[18]

West further argues that his actions did not "rise to the level of [o]bstruction," relying on *Beckom v. State*[19] and *Coley v. State*.[20] These cases are factually distinguishable. In *Beckom*, the defendant initially refused to respond when the police repeatedly knocked on her door and called her home phone.[21] When the defendant finally opened the door, she was verbally abusive. We concluded that her actions did not constitute obstruction because there was no evidence that she knew that there was an on-going police investigation or that she attempted to wilfully impede such an investigation.[22] In *Coley,* the defendant refused to comply with the officer's orders to move away from a truck and to stop.[23] We reversed his conviction for obstruction because there was no evidence that the defendant obstructed or hindered the officer, noting that the defendant did not "speak to, or argue with, [the officer]. At most, he did not respond immediately to [the officer's] orders."[24]

In the instant case, after concluding that Cartwright was frightened of West, Officer Day repeatedly directed West to leave the scene, specifically advising him that failure to comply would result in his arrest. West refused to listen, and he continued to speak and ignore the officer's statements. The question of whether West's refusal to obey Day's repeated commands to leave the scene had the effect of

---

[16] *Green v. State*, 240 Ga. App. 774, 775 (1) (525 SE2d 154) (1999).

[17] (Punctuation omitted.) *Carr*, 176 Ga. App. at 114 (1).

[18] See *Williams v. State*, 289 Ga. App. 402, 403 (1) (657 SE2d 556) (2008) (officer was engaged in the lawful discharge of her duties when she responded to a 911 call regarding loud music); *Mai v. State*, 259 Ga. App. 471, 472 (1) (577 SE2d 288) (2003); *Green*, 240 Ga. App. at 775 (1).

[19] 286 Ga. App. 38 (648 SE2d 656) (2007).

[20] 178 Ga. App. 668 (344 SE2d 490) (1986).

[21] See *Beckom*, 286 Ga. App. at 42 (2).

[22] See id.

[23] See *Coley*, 178 Ga. App. at 668.

[24] Id.

YALE LAW LIBRARY

hindering or obstructing the officer was for the factfinder.[25] Given the evidence submitted in this case, the jury was authorized to find West guilty beyond a reasonable doubt of the offense of obstruction of an officer.[26]

West also contends that Officer Day was not a credible witness because he purportedly lied when he told West that he had obtained information regarding Cartwright and would provide it to the authorities in Lumpkin County and because the officer's trial testimony on this issue was inconsistent with his testimony during the suppression hearing. But this argument affords West no relief, as " '[r]esolving conflicts in the testimony of witnesses and weighing the evidence are functions for the jury, not for this Court on appeal.' "[27]

Finally, West argues that the jury was "unduly swayed" by similar transaction evidence admitted at trial regarding his two prior obstruction convictions. In his brief, West specifically states that he does not challenge the admission of the introduction of the similar transaction evidence. Nevertheless, he argues that "the circumstances of the previous charges are emphasized to show that the jury had been improperly influenced and convinced that a standard had been established which [West] has also breached in this case." West does not provide any citation of authority to support his apparent position that the *proper* admission of similar transaction evidence constitutes a basis for reversal, and we are aware of none.

*Judgment affirmed. Andrews, P. J., and Bernes, J., concur.*

DECIDED FEBRUARY 12, 2009.

*James M. Adam*, for appellant.
*Lee Darragh, District Attorney, John G. Wilbanks, Jr., Jennifer D. Hart, Assistant District Attorneys*, for appellee.

---

[25] See *Imperial v. State*, 218 Ga. App. 440, 441 (461 SE2d 596) (1995).
[26] See id.; OCGA § 16-10-24 (a).
[27] *London v. State*, 289 Ga. App. 17, 20 (2) (656 SE2d 180) (2007).