[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 19-10927
Non-Argument Calendar
_____

D.C. Docket No. 1:18-cv-01745-SCJ


RYAN DEROWITSCH,
LAURA DEROWITSCH,

                                    Plaintiffs - Appellees,

versus

JONATHAN GRANGER,
STEPHEN ARSENAULT,
DANIEL BAUER,
BREANNA SHY,
BRANSON HARRIS,

                                    Defendants - Appellants.

_____

Appeal from the United States District Court
for the Northern District of Georgia
_____

(September 6, 2019)

Before TJOFLAT, JORDAN, and EDMONDSON, Circuit Judges.

PER CURIAM:

In this interlocutory appeal, Cobb County Sheriff's Office Deputies Jonathan Granger, Breanna Shy, Daniel Bauer, Stephen Arsenault, and Branson Harris ("Defendants") appeal the district court's denial of Defendants' motion to dismiss Plaintiffs Ryan and Laura Derowitsch's claims under 42 U.S.C. § 1983.[1] Defendants contend they are entitled to dismissal on grounds of qualified immunity. Reversible error has been shown; we affirm in part and reverse in part.

I.    Background

Plaintiffs' complaint alleges these facts. On 11 April 2017, Defendants Granger, Arsenault, Bauer, and Shy[2] traveled to Plaintiffs' home in Kennesaw,

---

[1] Plaintiffs also asserted against Defendants claims under Georgia law. Because Defendants moved to dismiss only Plaintiffs' federal section 1983 claims, Plaintiffs' state-law claims are not before us in this appeal.

[2] Defendant Harris was not present at Plaintiffs' home. Plaintiffs say Defendant Harris was the supervisor who later authorized Plaintiffs' arrests.

2

Georgia, to execute a writ of possession for the property.[3] Defendants arrived at Plaintiffs' home -- with no emergency sirens or lights activated -- and parked their police cars in front of the neighbors' houses.

Defendant Bauer knocked on the front door, without identifying himself as a law enforcement officer. After getting no response, Defendant Bauer knocked a second time, announced "Sheriff's Office," and asked for someone to come to the door. No officer rang the doorbell.

When no one answered the front door, Defendants entered the garage area and opened a door leading from the garage into the interior of the home. Defendant Shy remained in the garage while Defendants Granger and Arsenault walked to the back of the house. Neither Granger nor Arsenault knocked on the back door, announced his presence, or identified himself as a law enforcement officer. Both officers walked back to the front of the house, but Defendant Arsenault then returned to the backyard.

Sometime later, Ryan walked out the back door to smoke a cigarette. Defendant Arsenault pointed his gun at Ryan and ordered Ryan to put his hands up. Ryan complied immediately. Defendants Granger and Shy moved to the back of the house, also with their guns drawn and pointed at Ryan. Ryan complied

---

[3] Plaintiffs raise no challenge to the validity of the writ of possession, which was issued by the Cobb County Magistrate Court on 24 March 2017.

immediately with the officers' orders to turn around, to drop his cigarette, and to put his hands behind his back. Defendant Granger placed Ryan in handcuffs and escorted him to a police car. At all times, Ryan cooperated with the officers and offered no resistance.

During the encounter, Ryan asked the officers what was going on and why the officers were there.[4] When Defendant Granger told Ryan that the officers had been attempting to contact him, Ryan explained that he had been in the back of the house and did not hear them. Defendants told Ryan that evicted persons are typically given 24 hours to remove personal property from the home, but because Plaintiffs failed to answer the door, Plaintiffs would be arrested without an opportunity to remove their belongings.

Meanwhile, Defendant Bauer entered the house. When Defendant Bauer asked whether anyone was inside, Laura announced herself. Defendant Bauer told Laura to put her hands in the air, to turn around, and to put her hands behind her back. Laura complied immediately and was cooperative. Defendant Bauer placed Laura in handcuffs and escorted her to a police car.

---

[4] Nothing indicates that Defendants stated the purpose of their visit until after Ryan was already in custody or that Defendants had reason to believe that Plaintiffs knew about the issuance of the writ of possession.

4

Both Ryan and Laura were charged with misdemeanor obstruction, in violation of O.C.G.A. § 16-10-24(a). According to Plaintiffs' complaint, the arrest affidavits set forth the following factual basis for Plaintiffs' arrests: "While attempting to execute writ number 17-E-03638, we knocked and announced our presence on several doors and windows of the residence. After more than 30 minutes, the subjects refused to come to the door, . . .."

Plaintiffs were booked into the Cobb County Detention Center, where they were each held for over thirty hours until they posted bond. While Plaintiffs were being held, their personal possessions were removed from the home and left on the front lawn; most of the items were ultimately damaged or stolen as a result. The charges against Plaintiffs were later dismissed.

Pertinent to this appeal, Plaintiffs asserted against Defendants claims for false arrest, false imprisonment, and for excessive force in violation of the Fourth, Fifth, and Fourteenth Amendments. The district court denied Defendants' motion to dismiss.

II.    Discussion

We review de novo the district court's denial of a motion to dismiss on qualified immunity grounds. Gates v. Khokhar, 884 F.3d 1290, 1296 (11th Cir. 2018). "[W]e accept the facts alleged in the complaint as true, drawing all reasonable inferences in the plaintiff's favor." Id. (quotation and alteration omitted).

A. False Arrest/False Imprisonment

"Qualified immunity protects government officials performing discretionary functions from suits in their individual capacities unless their conduct violates clearly established statutory or constitutional rights of which a reasonable person would have known." Id.

A federal right is "clearly established" when "the contours of [the] right are sufficiently clear that every reasonable official would have understood that what he is doing violates that right." Ashcroft v. al-Kidd, 563 U.S. 731, 741 (2011) (quotations and alterations omitted). "We do not require a case directly on point, but existing precedent must have placed the statutory or constitutional question

6

beyond debate." Id. (emphasis added). "[Q]ualified immunity will be denied only if the preexisting law by case law or otherwise makes it obvious that the defendant's acts violated the plaintiff's rights in the specific set of circumstances at issue." Gates, 884 F.3d at 1297 (quotation and alteration omitted).

Plaintiffs allege that they were arrested without probable cause, in violation of the Fourth Amendment.[5] "Probable cause exists where the facts within the collective knowledge of law enforcement officials, derived from reasonably trustworthy information, are sufficient to cause a person of reasonable caution to believe that a criminal offense has been or is being committed." Id. at 1298.

"Even without actual probable cause, however, a police officer is entitled to qualified immunity if he had only 'arguable' probable cause to arrest the plaintiff." Id. "Arguable probable cause exists where reasonable officers in the same circumstances and possessing the same knowledge as the defendant could have believed that probable cause existed to arrest.'" Id. (alteration omitted). "Whether an officer possesses probable cause or arguable probable cause depends on the elements of the alleged crime and the operative fact pattern." Brown v. City of Huntsville, 608 F.3d 724, 735 (11th Cir. 2010).

---

[5] Plaintiffs' false imprisonment claim is also predicated on the lack of probable cause for Plaintiffs' arrest.

Under Georgia law, a person commits the offense of misdemeanor obstruction when he "knowingly and willfully obstructs or hinders any law enforcement officer . . . in the lawful discharge of his or her official duties." O.C.G.A. § 16-10-24(a).  Examples of conduct that has resulted in a misdemeanor obstruction conviction in Georgia include "flight from police officers after a lawful command to halt, refusal to provide identification or giving false information to officers during an investigation. . . , lying to officers attempting to execute a warrant . . . , or the arrestee's slapping an officer while he was making the arrest." Beckom v. State, 648 S.E.2d 656, 659 (Ga. Ct. App. 2007) (collecting cases).  On the other hand, a person who complies with an officer's lawful order is not guilty of misdemeanor obstruction.  See Lackey v. State, 686 S.E.2d 112, 114-15 (Ga. 2009) (reversing a conviction for misdemeanor obstruction where the defendant was fleeing after having shot a man but complied immediately with the pursuing officer's order to stop); Coley v. State, 344 S.E.2d 490, 490-91 (Ga. Ct. App. 1986) (reversing a conviction for misdemeanor obstruction where the evidence showed "[a]t most [that defendant] did not respond immediately" to the officer's order to stop); see also Reese v. Herbert, 527 F.3d 1253, 1273 (11th Cir. 2008) (concluding no arguable probable cause existed to arrest plaintiff for misdemeanor

8

obstruction when plaintiff acted in a calm manner and refused to obey "an overly broad and unreasonable demand" to clear the area).

Given Plaintiffs' version of the facts -- which we accept as true at this stage of the proceedings -- an objective officer under the circumstances could not have believed that probable cause existed to arrest Plaintiffs for obstruction. Defendants came to Plaintiffs' home to execute a writ of possession: a civil process. Defendants had no warrant to arrest Plaintiffs or to search the home and nothing indicates that, prior to their arrival, Defendants suspected Plaintiffs of criminal activity.

Nor do the alleged facts indicate that Plaintiffs ignored or disobeyed a lawful order or otherwise obstructed or hindered Defendants in the lawful discharge of their official duties. Defendants issued no order for the occupants of the house to answer the door or to come out of the house. When Ryan exited the house and first encountered Defendant Arsenault, Ryan made no attempt to flee or to retreat back inside. In a similar way, Laura announced herself as soon as Defendant Bauer entered the house and asked if anyone was inside. Both Plaintiffs complied immediately -- with no verbal or physical resistance -- with Defendants' orders to put their hands up, turn around, and put their hands behind their back.

9

The current record indicates that Plaintiffs were arrested based solely on Plaintiffs' failure to answer the door in response to Defendants' knocking. The Supreme Court has said that, "whether the person who knocks on the door and requests the opportunity to speak is a police officer or a private citizen, the occupant has no obligation to open the door or to speak." Kentucky v. King, 563 U.S. 452, 469-70 (2011). Under Georgia law, "[r]efusal to answer knocking at one's front door, ringing of the door bell, or ringing of the phone, without more, does not constitute obstruction of the police, even if it is the police doing the knocking and ringing." Beckom, 648 S.E.2d at 659 (reversing a conviction for misdemeanor obstruction where defendant failed for one hour to answer the door or the phone and then denied knowledge of a minor who was in fact inside defendant's home); see Harris v. State, 726 S.E.2d 455, 457 (Ga. Ct. App. 2012) (reversing an obstruction conviction when defendant was merely uncooperative with officers doing a welfare check, but disobeyed no order and exhibited no violent or threatening conduct: a person cannot be guilty of obstruction for "peaceably asserting his constitutional rights as he understood those rights.").

The law was sufficiently clear at the time of Plaintiffs' arrest in 2017 -- such that every reasonable officer under the circumstances would have understood -- that Plaintiffs' failure to answer the door, without more, constituted no probable

10

cause or arguable probable cause to arrest Plaintiffs for obstruction. At this early stage in the proceedings and on these assumed facts, Defendants are unentitled to qualified immunity on Plaintiffs' claims for false arrest and for false imprisonment.

### B. Excessive Force

Plaintiffs also asserted against Defendants a claim for excessive use of force based on Defendants' placing Plaintiffs in handcuffs and pointing their guns at Ryan.[6]

The right to make an arrest "necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it." Graham v. Connor, 490 U.S. 386, 396 (1989). "It follows, then, if an arresting officer does not have the right to make an arrest, he does not have the right to use any degree of force in making that arrest." Bashir v. Rockdale Cnty., 445 F.3d 1323, 1332 (11th Cir. 2006).

---

[6] Defendants argue -- relying on language in Hinojosa v. Terrell, 834 F.2d 1223, 1231-32 (5th Cir. 1988) -- that the "display" of a firearm constitutes no "use of force" for purposes of stating an excessive force claim. We decline to address this argument on appeal. Whether or not the "display" of a gun might constitute "use of force" in some instances, Defendants are entitled to qualified immunity on Plaintiffs' claim for excessive force under the facts and circumstances presented in this case.

11

We have stressed, however, that "where an excessive force claim is predicated solely on allegations the arresting officer lacked the power to make an arrest, the excessive force claim is entirely derivative of, and is subsumed within, the unlawful arrest claim." Id.; see Jackson v. Sauls, 206 F.3d 1156, 1171 (11th Cir. 2000) ("Under this Circuit's law . . . a claim that any force in an illegal stop or arrest is excessive is subsumed in the illegal stop or arrest claim and is not a discrete excessive force claim."). We have explained that "if a stop or arrest is illegal, then there is no basis for any threat or any use of force, and an excessive force claim would always arise but only collaterally from the illegal stop or arrest claim." Jackson, 206 F.3d at 1171. Put another way -- because a plaintiff who succeeds on an unlawful arrest claim may recover damages for the manner of and the force used in effecting that arrest -- permitting a jury to award damages on separate claims for unlawful arrest and for excessive force would result in a plaintiff "receiv[ing] double the award for essentially the same claims." Bashir, 445 F.3d at 1332.

In Bashir, we first concluded that officers who arrested plaintiff in his home without a warrant were unentitled to qualified immunity on plaintiff's claim for false arrest. 445 F.3d at 1331. We then considered plaintiff's claim for excessive force. Plaintiff made no assertion that the force used (grabbing plaintiff's arm,

12

throwing plaintiff to the floor, and handcuffing plaintiff) was more than was reasonably necessary to effect the arrest; plaintiff argued only that the force was unlawful "because any force used in an illegal arrest is necessarily excessive." Id. We concluded that plaintiff failed to present a discrete claim for excessive force and, thus, that his excessive force claim failed as a matter of law. Id. at 1332.

Then, we explained that plaintiff's claim that officers "used excessive force in the arrest because they lacked the right to make the arrest . . . is not a discrete constitutional violation; it is dependent upon and inseparable from his unlawful arrest claim." Id.; see Williamson v. Mills, 65 F.3d 155, 158-59 (11th Cir. 1995) (concluding that plaintiff's excessive force claim -- based on the officer's grabbing plaintiff's shoulder, pushing plaintiff against a van, and handcuffing plaintiff -- was subsumed in plaintiff's claim for false arrest where plaintiff argued only that "there was no need for any force as the force was used to accomplish an unlawful arrest." (emphasis in original)).

Like the plaintiffs in Bashir and in Williamson, Plaintiffs' excessive force claim is predicated solely on allegations that Defendants lacked probable cause or arguable probable cause to arrest Plaintiffs. Plaintiffs make no allegation that Defendants used much force in handcuffing them: Plaintiffs assert only that the handcuffing was excessive because any force used to effect an unlawful arrest is

13

unreasonable.  Plaintiffs' allegations also indicate that Defendants pointed their weapons at Ryan only from the time Ryan walked out of the house to the time Ryan was handcuffed.  Plaintiffs allege no facts indicating that Defendants continued pointing their weapons at Ryan after Ryan was restrained or that Defendants made any other physical or verbal threats in conjunction with drawing their weapons.

In this case, we cannot conclude that the complained-of force constitutes more than de minimis force incident to Plaintiffs' arrests.  Put differently, if the arrests are otherwise lawful, the force used was not unlawful (certainly not clearly unlawful).  Because Plaintiffs have failed to allege facts sufficient to state a discrete use-of-force claim detached from the false arrest/false imprisonment claim, Plaintiff's excessive force claim is entirely derivative of Plaintiffs' false arrest claim and fails as a matter of law.  See Bashir, 445 F.3d at 1332; Williamson, 65 F.3d at 158-59.  Defendants are thus entitled to qualified immunity on Plaintiffs' separate claim for excessive force.

AFFIRMED IN PART; REVERSED IN PART.

14

JORDAN, Circuit Judge, concurring.

I join the court's opinion in full.  I write separately only to point out that if Mr. and Mrs. Derowitsch are able to prevail on their federal false arrest claim, they can recover damages for the use of force to effectuate their arrests.  *See Bashir v. Rockdale County*, 445 F.3d 1323, 1332 (11th Cir. 2006).