**SECOND DIVISION**
**BARNES, P. J.,**
**BOGGS and RICKMAN, JJ.**

**NOTICE: Motions for reconsideration must be**
***physically received*** **in our clerk's office within ten**
**days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules**

**June 16, 2016**

# In the Court of Appeals of Georgia

A16A0281. BLEDSON v. THE STATE.                    RI-010C

RICKMAN, Judge.

Following a jury trial, Javon Bledson was convicted of aggravated battery and three counts of aggravated assault.[1] He argues that the evidence was insufficient to sustain his conviction as to one of the aggravated assault counts, and that the trial court erred in giving the jury conflicting instructions as to whether a firearm is a deadly weapon. We disagree and affirm.

> On appeal from a criminal conviction, we view the evidence in the light most favorable to support the jury's verdict, and the defendant no longer enjoys a presumption of innocence. We do not weigh the evidence or judge the credibility of the witnesses, but determine only

---

[1] Bledson was also found guilty of criminal attempt to commit murder, which merged into his aggravated battery conviction for sentencing purposes, and he was acquitted of a fourth count of aggravated assault.

whether the evidence authorized the jury to find the defendant guilty of the crimes beyond a reasonable doubt in accordance with the standard set forth in *Jackson v. Virginia*, 443 U. S. 307 (99 SCt 2781, 61 LEd2d 560) (1979).

(Citation and punctuation omitted.) *Hall v. State*, 335 Ga. App. 895, 402 (783 SE2d 400) (2016).

So construed, the evidence presented at trial showed that on the evening in question, the two victims, a married couple, were walking home through a neighborhood after swimming in a nearby creek when they happened upon Bledson urinating in the woods. Bledson and the male victim got into a heated exchange after Bledson made a vulgar remark toward the male victim's wife. Bledson appeared to send a signal on his cellular phone that resulted in at least eight people rushing outside from a nearby home.

The male victim directed his wife to call 911, but when she tried to do so, she was struck by one of the men who had rushed out of the house. Bledson struck the male victim on the back of the head with a pistol when he attempted to render aid to his wife. A massive fight ensued, and at one point the female victim was knocked unconscious. Upon seeing his incapacitated wife, the male victim broke free from the attack and attempted to drag her to safety.

After pulling his wife across the street and into an adjacent alleyway while repeatedly being hit, the male victim believed for a brief period of time that the beatings had ceased. He then noticed, however, that Bledson and the other individuals had lined up in front of him and his wife "like soldiers," and despite his pleas to let them go, Bledson announced, "you're going to die, [explicative]." Preparing for what he actually believed was to be the end of his life, the male victim laid his wife on the ground "and got ready to die." The group again descended upon the victims and the beatings began anew.

The attack culminated when Bledson approached the male victim, defenseless and being helped by a bystander who had come from a nearby home, and shot him in the back. Three days later, the male victim awoke in the intensive care unit of a hospital with a hole in his abdomen from the bullet's exit wound, having undergone lifesaving surgery. He was also missing a front tooth.

Bledson was one of six people indicted for the crimes, but was tried separately from his co-defendants. During the ensuing trial, both victims testified that they recognized Bledson from a previous encounter with him, and each positively identified him prior to trial from a photographic lineup and again at trial as the man whom they saw urinating in the woods, and shooting the male victim. Two additional

3

witnesses testified that they heard the commotion from a nearby home and upon going outside to survey the scene, actually saw Bledson shoot the male victim. Both witnesses knew Bledson personally, and each had positively identified him from a photographic lineup prior to trial and identified him again at trial as the gunman. Finally, a woman testified that Bledson and his co-defendants had been attending a barbeque at her house prior to the incident, and that she both witnessed and voiced objection to Bledson's possession of a gun in her home. She further testified that she had argued with her husband when he refused to ask Bledson to leave, and that shortly thereafter her husband instructed her to safeguard their children because a fight had erupted and "he" had a gun.

The jury convicted Bledson, and the trial court denied his motion for new trial. This appeal follows.

1. Bledson argues that the evidence was insufficient to support his conviction on one of the aggravated assault counts. Specifically, Count 4 of the indictment alleged that Bledson and several other named defendants committed an aggravated assault on the male victim "with their hands and feet, objects which when used offensively against a person did result in serious bodily injury to [the male victim] . . ." Bledson contends that the State failed to prove that he personally hit the male

victim with his hands or feet[2]–as opposed to his gun–during the attack and/or failed to prove that the male victim received any injury from such an attack. We disagree.

First, the State was not required to prove that Bledson himself actually struck the male victim with his hands or feet. Rather, "[e]very person concerned in the commission of a crime is a party thereto and may be charged with and convicted of commission of the crime." OCGA § 16-2-20 (a). To that end, a person is "concerned" in a crime if he or she "[i]ntentionally aids or abets" in its commission or "[i]ntentionally advises, encourages, hires, counsels, or procures another" to do so. OCGA § 16-2-20 (b) (3), (4); see *Burks v. State*, 268 Ga. 504 (491 SE2d 368) (1997). The evidence set forth above was more than sufficient for the jury to conclude that Bledson had done either, or both.[3] See *Johnson v. State*,188 Ga. App. 411, 412 (2)

---

[2] See *Carolina v. State*, 276 Ga. App. 298, 304 (5) (a) (623 SE2d 151) (2005) ("[W]hen an indictment charges that a crime was committed in more than one permissible way—as in this case by the use of the conjunctive 'and'—proof at trial that the crime was committed in one of the ways expressed in the indictment is sufficient to sustain the conviction."); see also *Cash v. State*, 297 Ga. 859, 862 (2) (778 SE2d 785) (2015).

[3] To the extent that Bledson also challenges the male victim's failure to testify specifically that he had been hit "with hands and feet," the argument is specious. The male victim stated repeatedly that the crowd was "beating," "hitting," and "fighting" him and his wife, and that Bledson was the only person with a gun. The jury was authorized to conclude from this evidence that the crowd used their hands or their feet to affect the attacks. See *Lowe v. State*, 295 Ga. 623, 625 (1) (759 SE2d 841) (2014)

(373 SE2d 93) (1988) (affirming appellant's aggravated assault conviction based upon his conduct of aiding his brother during the assault on the victim); see also *Burks*, 268 Ga. at 504.

Further, the evidence presented was sufficient for the jury to conclude that the male victim received the requisite injury. As an initial matter, we note that although the crime of aggravated assault may be completed without proof of actual injury, the language used in the indictment in this case did require such proof. See OCGA § 16-5-21 (b) (2) ("A person commits the offense of aggravated assault when he or she assaults . . . [w]ith a deadly weapon or with any object, device, or instrument which, when used offensively against a person, is likely to *or* actually does result in serious bodily injury . . .") (emphasis added); *Reynolds v. State*, 294 Ga. App. 213, 215-16 (1) (a) (668 SE2d 846) (2008) (recognizing that when the State chooses to allege the commission of a crime using one particular statutory method—i.e., aggravated assault resulting in actual serious bodily injury—it is confined to proving that specific method). Compare *Peterson v. State*, 204 Ga. App. 532, 533 (1) (419 SE2d 757) (1992) (holding that a plain reading of OCGA § 16-5-21 (a) (2) allows that "the crime

---

(recognizing that a jury is authorized to draw reasonable inferences from the evidence presented).

6

[of aggravated assault] is complete without proof of injury") (citation and punctuation omitted).

Regardless, here, the evidence of injury was sufficient to sustain the challenged aggravated assault conviction.[4] Contrary to Bledson's assertion, the male victim did not testify that his tooth became dislodged when he was hit with a gun, nor did the evidence demand such a finding. Rather, the male victim testified the he had "no idea" how and when he lost his tooth, only that he "woke up in the hospital and [it] was gone." While the male victim may have speculated that it resulted from the impact of the gun, the jury, which also viewed photographs showing the extent of the male victim's injuries, was fully authorized to infer that the loss of his tooth instead resulted from the prolonged beating that he endured at the hands and feet of Bledson and/or the other co-defendants. See *Wheeler v. State,* 232 Ga. App. 749, 749 (503 SE2d 628) (1998) (sustaining appellant's conviction on aggravated assault based upon evidence that the victim suffered bruising and broken teeth after a protracted beating); *Lord v. State*, 297 Ga. App. 88, 95 (2) (676 SE2d 404) (2009) (holding that the jury was authorized to infer from the evidence the causes of the various injuries

---

[4] We note that Bledson did not challenge the sufficiency of the evidence as to any other count in the indictment.

7

sustained by the victim during a prolonged assault); see also *Quaile v. State*, 172 Ga. App. 421, 422 (1) (323 SE2d 281) (1984).

2. Bledson further contends that the trial court erred in charging the jury as to whether a firearm constitutes a deadly weapon for the purposes of aggravated assault.[5] The trial court correctly instructed the jury that the State had the burden of proving "as a material element of aggravated assault," whether the assault was made with a deadly weapon, and further, that the jury must resolve whether the firearm, as alleged to have been used in the indictment, "in fact, constituted a deadly weapon or in the manner that it was used, [was] likely to cause serious bodily injury." The trial court also instructed the jury, however, that "a firearm, when used as such, is a deadly weapon as a matter of law." Bledson asserts that the latter charge confused the jury on a material issue of the case.

Because Bledson failed to object to the jury charge at trial, it is subject only to plain error review on appeal. See OCGA § 17-8-58 (b). Under that analysis, we must determine "whether the instruction was erroneous, whether it was obviously so, and whether it likely affected the outcome of the proceedings." (Citation and punctuation

---

[5] We note that Bledson was charged with criminal attempt to commit murder and aggravated battery, but not aggravated assault, based upon his act of shooting the male victim.

8

omitted.) *State v. Kelly*, 290 Ga. 29, 33 (2) (a) (718 SE2d 232) (2011). "If all three of these questions are answered in the affirmative, [this] [C]ourt has the discretion to reverse if the error seriously affects the fairness, integrity or public reputation of the proceedings below." (Citation omitted.) Id. As noted by our Supreme Court, "[s]atisfying all four prongs of this standard is difficult, as it should be." (Citation and punctuation omitted.) Id.

We conclude that—even assuming that the given charge was erroneous and obviously so—Bledson has made no showing that it likely affected the outcome of the proceedings or that it seriously affected the fairness, integrity, or public reputation of the trial. The overwhelming evidence showed that Bledson struck the male victim on the head with his gun at the beginning of the melee, and the male victim testified that throughout the violent and prolonged assault that followed, he recalled seeing Bledson's handgun on more than one occasion, he actually believed that he was going to die, and even before being shot, he had been beaten to the point of "total[ ] defenseless[ness]." These facts established that Bledson's handgun as used in the assault constituted a deadly weapon. See *Howell v. State*, 330 Ga. App. 668, 674 (2) (769 SE2d 98) (2015) (holding evidence that appellant struck the victim in the head with a handgun, which caused her to fall to the ground, bleed, and fear for her life,

9

constituted overwhelming evidence that appellant's handgun was used as a deadly weapon); see also *Ortiz v. State*, 292 Ga.App. 378, 381 (2) (665 SE2d 333) (2008) (holding that the pistol used to hit the victim and cause him to bleed and believe he was going to be killed was per se a deadly weapon).

Moreover, the jury was charged that the State bore the burden of proving that the assault was inflicted with a deadly weapon, and that it, the jury, must decide from the evidence whether the firearm as used constituted such. Under these circumstances, Bledson has failed to show that the erroneous charge likely affected the outcome of his trial. See *Howell*, 330 Ga. App. at 674 (2) (declining to reverse appellant's conviction despite erroneous charge that a handgun constituted a deadly weapon per se in light of the overwhelming evidence of the manner in which the weapon was used). Compare *Byrd v. State*, 325 Ga. App. 24, 29 (2) (a) (752 SE2d 84) (2013) (holding that erroneous charge warranted reversal of aggravated assault conviction because there was no record evidence, i.e., degree of force used, the likelihood of serious injury, or the nature of any injuries allegedly received, to support a conclusion that the handgun was used as a deadly weapon). In light of the overwhelming evidence of Bledson's guilt, we find that the erroneous charge also did not seriously

affect the fairness, integrity or public reputation of the proceedings. See *Kelly*, 290

Ga. at 33 (2) (a); *Howell*, 330 Ga. App. at 675.

*Judgment affirmed. Barnes, P. J., and Boggs, J., concur*.