**SECOND DIVISION**
**MILLER, P. J.,**
**RICKMAN and REESE, JJ.**

**NOTICE:** Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules

**March 12, 2020**

# In the Court of Appeals of Georgia

A19A2109. TISDALE v. THE STATE.

RICKMAN, Judge.

Following a jury trial, Nydia Tisdale was convicted on one count of misdemeanor obstruction of an officer.[1] She filed a motion for a new trial, which the trial court denied. Tisdale argues on appeal that the evidence was insufficient to support her conviction, the trial court erred in denying her motion in arrest of judgment to the indictment, and the trial court committed plain error by instructing the jury that the question of whether she was trespassing was irrelevant to the issue of whether she was guilty of obstructing an officer. For the reasons that follow, we affirm Tisdale's conviction.

---

[1] Tisdale was acquitted of felony obstruction of an officer and criminal trespass.

Viewed in the light most favorable to the verdict, the evidence adduced at trial showed that Tisdale was a "citizen-journalist" who attended candidate debates, meet and greets, and other events held for candidates running for political office. Tisdale video recorded and posted the events, unedited and without commentary, onto her website and other social media platforms.

In 2014, Tisdale attended a political rally at Burt's Pumpkin Farm, a farm owned by Mr. and Mrs. Burt in Dawson County. The event included several elected officials as well as candidates running for office, was opened to the public, and had been advertised as an event to which everyone was invited to attend. Tisdale and her camera attended.

Upon arriving, Tisdale introduced herself to Mrs. Burt and relayed her plan to video record and post footage of the rally, explaining that she had previously filmed and posted recordings of similar rallies. Mrs. Burt voiced no objection, although she would later testify that she understood Tisdale to be working for one of the elected officials. Nevertheless, there was no signage or other indication that filming was prohibited, and at least one other person was recording the event.

Tisdale sat in the front row and filmed the rally without incident until one of the speakers disparaged a political rival and allegedly complained to an event

2

organizer about Tisdale's recording of his comments.[2] Shortly thereafter, a staffer approached Tisdale, sat in an unoccupied chair next to her, and quietly requested that she stop filming. Tisdale informed the staffer that she had received permission from the property owner and continued recording.

The event organizer relayed the speaker's complaint to Mr. and Mrs. Burt and obtained their authorization to direct Tisdale to stop filming. He thereafter sat in the row directly behind Tisdale and spoke over her shoulder to inform her that the property owners had requested that she stop recording; she signaled the man to be quiet so as to not interrupt her filming and continued undeterred.

A captain from the Dawson County Sheriff's Office was providing security at the event and had been informed of the speaker's complaint. He heard the owners' directions for Tisdale to stop filming or leave, and witnessed the unsuccessful attempts to get her to do so. The captain – dressed in a black polo-style shirt with a badge embroidered over his chest and a police belt with a badge, gun, and radio – sat directly next to Tisdale, informed her that he was with the sheriff's office, and stated that the property owner had requested that she stop filming or leave the farm. When Tisdale responded, "no," the captain informed her that her third option was to go to

---

[2] The speaker denied being upset or complaining about the filming.

3

jail. After Tisdale still failed to comply, the captain grabbed Tisdale out of her seat and forcefully removed her from the venue as she struggled with him and demanded that he identify himself. The captain took Tisdale into an adjacent barn, where he physically restrained her until additional officers arrived and transported her to jail.

Under Georgia law, "a person who knowingly and willfully obstructs or hinders any law enforcement officer . . . in the lawful discharge of his or her official duties shall be guilty of a misdemeanor." OCGA § 16-10-24 (a). "[W]hether the actions of a defendant actually had the effect of hindering or impeding the officer is a decision for the trier of fact." (Citation and punctuation omitted.) *Martin v. State*, 291 Ga. App. 363, 367 (2) (b) (662 SE2d 185) (2008). In this case, the indictment alleged that Tisdale "knowingly and willfully obstruct[ed] and hinder[ed] [the captain] in the lawful discharge of his official duties by refusing to leave . . . Burt's Pumpkin Farm when asked to do so by [the captain], who was an authorized representative of the property owner in making that request. . . ."

1. Tisdale contends that the evidence was insufficient to support her conviction. Specifically, she asserts that she was given insufficient time to comply with the captain's instruction, he failed to provide her with "proper identification," and his requests were too ambiguous to constitute commands.

4

To be sure, the record contains ample evidence to suggest that the situation involving the complaining speaker – who appeared to be virtually alone in his objection to the video recording – and Tisdale could have been addressed differently. Nevertheless, it is not the role of this Court to explore alternative outcomes or to comment upon the facts; rather, our sole duty is to determine whether the evidence, viewed in the light most favorable to the verdict, was sufficient for any rational juror to find the defendant guilty of the charged offense beyond a reasonable doubt. See *Heidt v. State*, 292 Ga. 343, 345 (1) (736 SE2d 384) (2013). We conclude that it was.

(a) Tisdale argues that she was not given enough time to comply to the captain's instruction prior to her arrest. But before the captain ever approached Tisdale, he observed as two different individuals, at least one of whom specifically told Tisdale that he was acting as a representative of the property owners, requested that she stop filming. The captain testified that when he then addressed Tisdale, he identified himself as law enforcement, directed her to stop filming or leave the event three separate times, and specifically advised her that her failure to comply would result in her arrest before he forced her from the venue while she struggled against him. These facts authorized the jury to conclude that Tisdale was given adequate time to comply with the captain's demands that she stop filming or leave the event prior

5

to her arrest. See generally *West v. State*, 296 Ga. App. 58, 61-62 (2) (673 SE2d 558) (2009), overruled on other grounds, *Worthen v. State*, 304 Ga. 862 (823 SE2d 291) (2019) (holding that the evidence was sufficient to sustain appellant's obstruction conviction based upon evidence that, although he was not committing a crime, he ignored the officer's repeated commands that he leave the scene, and was advised that his failure to do so would result in arrest).

Tisdale relies on *Coley v. State*, 178 Ga. App. 668 (344 SE2d 490) (1986), to argue that her failure to "respond immediately" to an officer's command could not amount to obstruction. Although we recognize that certain language in *Coley* may support her position, it does not change the result in this case. Since *Coley* was decided, the law governing misdemeanor obstruction has evolved. See *Harris v. State*, 314 Ga. App. 816, 820-821 (726 SE2d 455) (2012) (discussing the history of the obstruction law and noting that, prior to a 1986 statutory amendment, a showing of violence or its equivalent was an essential element of the crime). The examination of what conduct rises to the level of misdemeanor obstruction of an officer necessarily involves a continuum of facts and events, specific to each case, from which the jury must determine whether the elements of the crime are satisfied. See generally *Timberlake v. State*, 315 Ga. App. 693, 695 (1) (727 SE2d 516) (2012)

6

("We have held that argument and stubborn obstinance are all examples of conduct that may satisfy the obstruction element.") (citation and punctuation omitted).

(b) Tisdale asserts that the captain failed to provide "proper identification" because, although he informed her that he was with the sheriff's office, he failed to give his name. Her argument is based upon the criminal trespass statute, OCGA § 16-7-21 (b) (3), which provides that "[a] person commits the offense of criminal trespass when he or she knowingly and without authority . . . [r]emains upon the land or premises of another person . . . after receiving notice . . . , upon proper identification, [from] an authorized representative of the owner or rightful occupant to depart."

Tisdale was not convicted of criminal trespass, however, and the obstruction statute under which she was convicted does not contain any such identification requirement. See OCGA § 16-10-24 (a). Rather, as indicted, the State was required to prove that Tisdale "knowingly and willfully" obstructed the captain in the lawful discharge of his official duties by refusing to leave when told to do so by himself, acting as an authorized representative of the Burts. Evidence that the captain identified himself as a law enforcement officer while displaying a badge on his person and informed Tisdale that he was acting on behalf of the property owners was sufficient to authorize the jury to conclude that she had the requisite knowledge of his

7

identity. See id.; see generally *Frayall v. State*, 259 Ga. App. 286, 288 (2) (576 SE2d 654) (2003).

Tisdale nevertheless argues that because the indictment injected elements of the crime of criminal trespass – i.e., alleged that she "refus[ed] to leave . . .when asked to do so by [the captain]" – the State was required to prove that the captain lawfully asked her to leave, necessarily invoking the identification elements of the criminal trespass statute. To be sure, the State had to prove that the captain was acting in lawful discharge of his official duties to prove obstruction. See OCGA § 16-10-24 (a). "But this Court has recognized that all law enforcement officers have the general duty to enforce the law and maintain the peace." (Citation and punctuation omitted.) *Stryker v. State*, 297 Ga. App. 493, 494 (677 SE2d 680) (2009); see also *West*, 296 Ga. App. at 61 (2). "They carry this duty twenty-four hours a day, on and off duty." *Stryker*, 297 Ga. App. at 494.

Regardless, the State met its burden of proof in this case. In addition to the captain's engagement to provide security at the event, both he and the event organizer testified that they explicitly told Tisdale that they had spoken to the property owners and that the property owners had directed her to stop filming or leave the farm. Such evidence authorized the jury's determination that the captain was operating within his

8

proper authority. Cf. *Nash v. State*, 222 Ga. App. 766, 767 (2) (476 SE2d 69) (1996) (holding that "[t]he testimony of the victim's 19–year–old sister that she was living at the residence leased by her aunt" was sufficient evidence to allow the jury to conclude that she had the authority to order appellant off the premises).

(c) Tisdale argues that the captain's requests were too ambiguous to constitute commands. She contends that in giving her choices – namely, to stop recording, leave the event, or be arrested – he failed to communicate a direct order.

The captain testified that, after witnessing two other individuals request that Tisdale stop filming, he directed her to stop recording or leave the event three times before he gave her the option of being arrested for failing to comply with his instructions. The jury was authorized to conclude from this evidence that the captain sufficiently communicated to Tisdale that despite offering her choices, her compliance with his demands was not voluntary. Compare *Thomas v. State*, 322 Ga. App. 734, 739 (2) (b) (746 SE2d 216) (2013) (holding that by requesting appellant to "come here for a second," the officer failed to "use[ ] language or tone of voice indicating compliance with [his] request might be compelled").

2. Tisdale contends that the trial court erred by denying her motion in arrest of judgment because the indictment failed to allege the commission of a crime.

9

Specifically, Tisdale argues that because the indictment did not allege that the captain "properly identified" himself as a representative of the property owner, and further accused her only of refusing the captain's "request" (as opposed to command) to leave the property, she could admit to each allegation it contained and not be guilty of a crime.

We reject the premise of Tisdale's argument. Tisdale was accused of "knowingly and willfully obstructing and hindering [the captain] in the lawful discharge of his official duties by refusing to leave . . . when asked to do so by [the captain], who was an authorized representative of the property owner in making that request. . . ." An admission by Tisdale to the conduct alleged is an admission to the essential elements of the crime of misdemeanor obstruction of an officer. See OCGA § 16-10-24 (a) ("[A] person who knowingly and willfully obstructs or hinders any law enforcement officer. . . in the lawful discharge of his or her official duties shall be guilty of a misdemeanor."); *West*, 296 Ga. App. at 60 (2).

Furthermore, as discussed in Divisions 1 (b) and 1 (c), it was within the province of the jury to determine whether the captain properly identified himself as a law enforcement officer or representative of the property owners and/or whether he sufficiently communicated his instructions to Tisdale. We note further, however, that

10

nothing in the criminal trespass statute requires that a property owner or his or her authorized representative command - as opposed to request - that an unwanted guest depart in order for the crime to be committed when the guest refuses to do so. See OCGA § 16-7-21 (b) (3). It follows that the trial court did not err in denying Tisdale's motion in arrest of judgment. See generally *McDaniel v. State*, 298 Ga. App. 558, 559-560 (680 SE2d 593) (2009).

3. Tisdale asserts that the trial court committed plain error by instructing the jury that it was not required to find her guilty of criminal trespass at the time the captain asked her to leave. Under the plain error analysis,

> we must determine whether the instruction was erroneous, whether it was obviously so, and whether it likely affected the outcome of the proceedings. If all three of these questions are answered in the affirmative, this Court has the discretion to reverse if the error seriously affects the fairness, integrity or public reputation of the proceedings below.

(Citation and punctuation omitted.) *Bledson v. State*, 337 Ga. App. 444, 447-448 (2) (787 SE2d 809) (2016); see *State v. Kelly*, 290 Ga. 29, 33 (2) (a) (718 SE2d 232) (2011). "Satisfying all four prongs of this standard is difficult, as it should be."

(Citation and punctuation omitted.) *Kelly*, 290 Ga. at 33 (2) (a); see also *Bledson*, 337 Ga. App. at 448.

> The trial court charged the jury that, as to the crime of obstruction of an officer,

> for your determination of whether or not the officer was in the lawful discharge of his official duties, it is not necessary for the State to prove the underlying offense that causes the officer to act. It is only necessary that the State prove beyond a reasonable doubt that the officer had probable cause to believe that the offense had been committed.

> It further instructed the jury that, as to the crime of criminal trespass,

> A person commits the offense of criminal trespass when that person knowingly, and without authority, remains on the land or premises of another person after receiving notice from, upon proper identification, an authorized representative of the owner to depart.

Tisdale contends that these jury instructions "confused the jury by instructing them that it was irrelevant to the obstruction count whether . . . Tisdale knowingly and without authority remained on the premises [and instead] could be convicted for obstruction simply by knowing that [the captain] was a law enforcement officer, even if she reasonably believed that the property owner had authorized her to film a public political rally, as she had done many times before." We disagree.

Georgia law is well established that, "[i]t is not necessary for the State to prove the underlying offense that causes the officers to act; it is only necessary to prove the elements of the obstruction statute, i.e., that the act constituting obstruction was knowing and wilful, and that the officer was lawfully discharging his official duties." (Citation and punctuation omitted.) *Kight v. State*, 181 Ga. App. 874, 875 (1) (354 SE2d 202) (1987). The charge, therefore, was not erroneous and the trial court did not commit plain error by giving it. See id.; OCGA § 17-8-58 (b). Tisdale's argument provides no ground for reversal. See *Kight*, 181 Ga. App. at 875 (1).

*Judgment affirmed. Reese, J., concurs, and Miller, P. J., concurs in judgment only.**

**\* THIS OPINION IS PHYSICAL PRECEDENT ONLY. COURT OF APPEALS RULE 33.2.**

13