**SECOND DIVISION**
**RICKMAN, C. J.,**
**MILLER, P. J., and PIPKIN, J.**

**NOTICE: Motions for reconsideration must be
*physically received* in our clerk's office within ten
days of the date of decision to be deemed timely filed.
https://www.gaappeals.us/rules**

**June 2, 2022**

# In the Court of Appeals of Georgia

A22A0462. CRUZ v. THE STATE.

RICKMAN, Chief Judge.

Following a jury trial, Christina Cruz was convicted of aggravated assault on a peace officer, removal of a weapon from a public official, attempted removal of a weapon from a public official, and misdemeanor obstruction of an officer.[1] Cruz argues, in part, that the evidence was insufficient to support her conviction on aggravated assault on a peace officer. We agree with Cruz that the evidence was insufficient to sustain her conviction on that crime as indicted; consequently, we reverse her conviction on that count. Cruz does not challenge her remaining convictions, which are affirmed.

---

[1] Cruz was also charged with interference with custody and felony obstruction of an officer; the trial court entered a directed verdict as to the former charge and the jury found Cruz not guilty of the latter.

On appeal from a criminal conviction, we view the evidence in the light most favorable to support the jury's verdict, and the defendant no longer enjoys a presumption of innocence. We do not weigh the evidence or judge the credibility of the witnesses, but determine only whether the evidence authorized the jury to find the defendant guilty of the crimes beyond a reasonable doubt in accordance with the standard set forth in *Jackson v. Virginia*, 443 U.S. 307 (99 SCt 2781, 61 LEd2d 560) (1979).

(Citation and punctuation omitted.) *Bledson v. State*, 337 Ga. App. 444, 444 (787 SE2d 809) (2016).

So construed, the evidence pertinent to the issues raised in this appeal shows that on the afternoon in question, Sergeant Ryan Long and Officer Alemedin Ajanovic from the City of Lilburn Police Department responded to the parking lot of a church in reference to a call about a runaway 16-year-old teenager who had been spotted by her family. The runaway was with her boyfriend, who was one of Cruz's teenage sons, and she was pregnant with his child. Upon their arrival, the officers were met by a family member of the runaway, who informed them that the runaway was inside of an SUV parked in the parking lot.

As they approached the vehicle, the officers could see that two people were sitting in the back seat. A second of Cruz's teenage sons came from inside the church

and in response to an inquiry from Sergeant Long, identified the vehicle's owner as his father, Cruz's husband. When Sergeant Long asked the teen to retrieve his father, he repeatedly asked "why?" and became confrontational.

The officers contemporaneously asked the runaway and her boyfriend to open the vehicle door, which they did. As Sergeant Long was engaged with the teen, Officer Ajanovic endeavored to speak to the runaway alone in order to check on her safety and welfare and to ensure that she was not being held against her will. When he asked her to step out of the vehicle, however, the boyfriend, who was sitting closest to the opened door, actively prevented her from doing so.

Meanwhile, Cruz and her husband had come out of the church and a crowd of about 20 people, including children, began to assemble around the officers. The officers explained that they that they needed to speak to the runaway, but Cruz approached them and adamantly refused, mentioning "DFACS" and an unknown person named "Sasha."

The scene quickly erupted into what can only be described as chaos. As the officers continued to try to get the runaway to exit the vehicle, Cruz, her husband, and the teen crowded them so that the officers' backs were pressed against the vehicle and then ignored the officers' repeated instructions to back up. The teen began posturing

to fight the officers, and Cruz and her husband got so close that Sergeant Long had to draw his ASP baton in an effort to move them back. At the same time, the runaway's boyfriend remained noncompliant, stating that the runaway was "not going anywhere" and asking "who was [Officer Ajanovic] to tell him what to do?"

At some point during the ensuing melee, the teen pinned Sergeant Long against the vehicle and Cruz grabbed for his ASP baton. Officer Ajanovic succeeded in pushing the teen away from Sergeant Long, although the teen and Cruz's husband then proceeded to crowd around Officer Ajanovic and put their hands on him. Sergeant Long pulled his taser and warned that they would be tased if they did not take their hands off of the officer. They did not comply, and Sergeant Long grabbed Cruz's husband from behind and attempted unsuccessfully to drive-stun[2] him.

Cruz then grabbed Sergeant Long's arm that was holding the taser, and her husband spun around and grabbed the sergeant's other arm. Cruz dug her nails into the sergeant's arm and began to wrestle the taser from his hand. Recognizing that he was in danger of losing it, Sergeant Long deployed one of the taser's two cartridges,

_____

[2] The sergeant described the taser as having two settings: a "drive-stun" mode, during which it is placed directly against the skin and is used for pain compliance but will not incapacitate a subject; and a second mode during which it is shot from a distance, releases a probe, and renders a subject incapacitated.

4

which shot into the ground. He attempted to deploy the second cartridge so as to deactivate the taser's incapacitating function, but Cruz stripped it from him before he could do so. As Cruz held the taser, Sergeant Long saw two red laser dots "sweep across" his pant leg, and he could hear the taser "cycling."[3] He pulled his firearm and ordered Cruz to drop the taser, which she did, but the melee continued.

Cruz, her husband, and her sons were ultimately arrested and charged with various crimes. During the ensuing trial, the jury heard testimony from Sergeant Long, Officer Ajanovic, and other responding law enforcement officers, as well as from Cruz, her husband, and her sons. The jury also viewed several video recordings of the incident, including footage and still photographs from the officers' body- and dash-cameras and a video recording from a witness's cellular phone.

The jury ultimately convicted Cruz of several crimes, including aggravated assault on a peace officer. Cruz filed a motion for new trial, which the trial court denied. This appeal follows.

Cruz argues that the evidence was insufficient to sustain her conviction on aggravated assault on a peace officer. We are constrained to agree.

---

[3] Sergeant Long explained that once a cartridge is deployed, the taser "cycles" for five seconds, during which you can hear an audible clicking sound.

The offense of simple assault is committed, among other ways,[4] when one "[c]ommits an act which places another in reasonable apprehension of immediately receiving a violent injury." OCGA § 16-5-20 (a) (2). A simple assault becomes aggravated when done "with any object, device, or instrument which, when used offensively against a person, is likely to or actually does result in serious bodily injury." OCGA § 16-5-21 (a) (2). The penalties are enhanced if the aggravated assault is committed upon a public safety officer who is engaged in the performance of his or her official duties. See OCGA § 16-5-21 (c) (1).

The crime of simple assault as set forth under OCGA § 16-5-20 (a) (2) is a general intent crime, meaning that the State need not prove that the accused intended to place another in reasonable apprehension of receiving immediate bodily injury. See *Patterson v. State*, 299 Ga. 491, 493 (789 SE2d 175) (2016) ("[T]he crime of simple assault as set forth in OCGA § 16-5-20 (a) (2), does not require proof of specific intent."); *Cole v. State*, 232 Ga. App. 795, 795 (502 SE2d 742) (1998) ("[I]ntent to injure is not an element of aggravated assault with a deadly weapon when the assault

---

[4] Georgia statutory law also provides that the crime of simple assault is committed when one "[a]ttempts to commit a violent injury to the person of another," see OCGA § 16-5-20 (a) (1), although the State alleged only that Cruz placed Sergeant Long in reasonable apprehension of immediately receiving violent injury in violation of subsection (a) (2).

6

element is predicated on OCGA § 16-5-20 (a) (2).") (citation and punctuation omitted). Nevertheless, the State must still prove that the accused intentionally committed an act that caused another to be placed in reasonable apprehension of receiving immediate bodily injury. See *Patterson*, 299 Ga. at 493, citing *Stobbart v. State*, 272 Ga. 608, 611-612 (3) (533 SE2d 379) (2000) ("There is an intent of the accused that must be shown, but it is only the criminal intent to commit the acts which caused the victim to be reasonably apprehensive of receiving a violent injury, not any underlying intent of the accused in assaulting the victim.") (punctuation omitted).

As indicted, Cruz was charged with the crime of aggravated assault on a peace officer in that she:

> did knowingly make an assault upon the person of [Sergeant Long], a public safety officer, with a taser, a device which when used offensively against a person is likely to result in serious bodily injury *by pointing it at him and cycling it*, while said officer was engaged in the performance of his official duties . . .

(Emphasis supplied). Consequently, the State had the burden of proving that Cruz assaulted Sergeant Long by intentionally pointing the taser at him and/or[5] by intentionally cycling it.[6] See OCGA §§ 16-5-20 (a) (2); 16-5-21 (a) (2), (c) (1); *Patterson*, 299 Ga. at 493-494; see also *Ford-Calhoun v. State*, 327 Ga. App. 835, 839 (1) (b) (761 SE2d 388) (2014) ("No averment in an indictment can be rejected as surplusage which is descriptive either of the offense or of the manner in which it was committed.") (citation and punctuation omitted).

To be sure, the evidence established that Cruz repeatedly failed to comply with Sergeant Long's commands; she forced the taser out of the sergeant's hand and into her own; the taser's laser skimmed over the sergeant's pant leg as he and Cruz struggled over its possession, indicating that the probes would hit him if discharged; and the sergeant experienced reasonable apprehension as a result of Cruz's actions. Nevertheless, although Cruz's act of taking the taser from the sergeant was

---

[5] "Where conjunctive pleadings set forth more than one act by which the accused committed the crime, the evidence is sufficient so long as it shows at least one of the acts alleged." (Citation and punctuation omitted.) *Riddick v. State*, 320 Ga. App. 500, 501 (1) (740 SE2d 244) (2013).

[6] Cruz does not challenge the fact that Sergeant Long was a public safety officer engaged in the performance of his official duties or that the taser was a device which, when used offensively against a person, was likely to result in serious bodily injury.

undeniably intentional, the sergeant admitted that her act of pointing it at him was not.

Moreover, the sergeant testified that he – not Cruz – discharged the taser as they fought for its control, and that the discharge resulted in the taser cycling for five seconds. The sergeant could thus hear the taser cycling for the brief seconds that Cruz held it. But the sergeant admitted that Cruz never had her hand on the grip of the taser, and that she dropped it almost immediately upon possessing it. Consequently, there was no evidence that Cruz herself cycled the taser and, even if she had, there was no evidence from which to conclude that she did so intentionally.[7]

It follows that the evidence was insufficient to sustain Cruz's conviction on aggravated assault on a peace officer as that crime was charged in the indictment. See *Ford-Calhoun*, 327 Ga. App. at 839 (1) (b) (reversing appellant's conviction for the crime of aggravated assault with intent to rob; the indictment alleged that appellant

---

[7] During its deliberations, the jury sent a note asking the trial court: "If a person removes a taser from a peace officer *without* pointing it at the officer or cycling it, does that constitute aggravated assault on a peace officer?" (Emphasis in original.) The trial court responded, "This is solely within the province of the jury as you alone are the finders of fact. You alone must make these decisions in accordance with instructions on the law given you." Cruz also asserts that this response to the jury's question constituted reversible error, but in light of our holding that the evidence was insufficient to sustain her conviction, we need not consider this issue.

9

committed the crime by "pointing a gun at [the victim] and demand[ing] money," but no evidence established appellant actually pointed a gun at the victim); see also *Calhoun v. State*, 318 Ga. App. 835, 837-838 (2) (a) (734 SE2d 809) (2012). Cruz's conviction on that count is, therefore, reversed.

*Judgment affirmed in part, reversed in part. Miller, P. J., and Pipkin, J., concur.*